IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. DENNIS HEBERT, *Defendant.* | Case No. CR-22-106-RAW |

## GOVERNMENT'S TRIAL BRIEF

COMES NOW the United States of America, by and through Christopher J. Wilson, United States Attorney, and Anthony C. Marek, Assistant United States Attorney, and respectfully submits its brief for trial in the above-captioned case.

## STATUS OF THE CASE

A. A jury trial is currently set for May 2, 2023, at 9:00 a.m., before the Honorable Ronald A. White.

B. Estimated time for trial (including jury selection) is 3 days.

C. The defendant is in custody.

D. Trial by jury has not been waived.

E. The United States expects to call approximately 14 witnesses.

F. An interpreter is not needed.

G. The United States proposed stipulations to Defendant, all of which were declined. The parties have conferred about exhibits and will file a notice of preadmission of exhibits.

H. Defendant has not given the United States notice of any affirmative defense. The defendant has not provided the United States with reciprocal discovery in relation to this matter. Additionally, the defendant has not provided the United States with notice of intent to offer an expert witness.

## FACTUAL OVERVIEW

Late on July 21, 2021, B.P., the mother of six-year-old K.D., went into her bathroom to take a shower. Defendant, the stepfather of B.P.'s sister, K.B., followed her. Defendant told B.P. that K.D. "made a few comments" to him "about . . . [Defendant] putting his peepee in [K.D.'s] bottom." Defendant, who for the past three nights had slept in the same bedroom as K.D. and K.D.'s five-year-old brother, proposed to B.P. that he would "stay out of [her] boys' room and sleep on the couch." B.P. recalled that Defendant then made a "goofy look" at her as he asked, "Do I look like a pedophile?"

B.P. suspected that there was more to the story. She was right. After Defendant left the bathroom, K.B. entered. K.B. looked "serious" and told B.P. that she had reviewed footage from the surveillance camera in the boys' bedroom. B.P. described the footage as showing Defendant "telling [K.D.] to be quiet and locking the bedroom door and shutting the camera off." A camera placed in the living room showed "K.D. running with his legs spread apart and hiking up [sic] as he runs out the door."

Around this time, K.D. told two of his cousins (K.B.'s daughters) what Defendant had done to him after turning the bedroom camera off. As recounted by K.B. in a written statement, K.D. told his cousins that Defendant "asked K.D. to play house and had put [Defendant's] dick in [K.D.'s] mouth and butt." K.B. asked K.D. to confirm whether what he had told his cousins was true. He said that it was. Before K.B. could find B.P. to tell her what she had learned, Defendant stopped K.B. and told her that "he had already talked to" B.P. and that B.P. was taking a shower. K.B. told Defendant that she wanted to talk to B.P. anyway, and Defendant told her that the door to the bathroom was locked. It wasn't, and K.B. had the discussion with B.P. described above. B.P. took K.D. to the hospital that day. They were directed to the Pittsburg County Child

Advocacy Center, where K.D. was medically examined and forensically interviewed. Over the course of two forensic interviews, K.D. explained that Defendant removed K.D.'s pants and inserted Defendant's penis into K.D.'s anus.

The camera in K.D.'s bedroom is motion-activated. In several video clips, Defendant openly masturbates in his bed, often while K.D. can be seen in the other bed. At 9:27 a.m. on July 20, 2021, Defendant and K.D. are seen in Defendant's bed. Defendant appears to be touching and kissing K.D. At 9:23 a.m. on July 21, 2021, Defendant is seen looking at K.D. while holding a finger up to Defendant's mouth, gesturing for K.D. to be quiet. Defendant closes the bedroom door, locks it with a chain lock, and turns toward K.D., again gesturing for K.D. to be quiet. Defendant then moves immediately toward the camera and takes the camera down from its position on the center wall, obscuring its view. At 9:33 a.m., K.D. enters the living room from the bedroom area with a distinctive, waddle-like gait as B.P. described. At 9:35 a.m., Defendant is seen replacing the camera in K.D.'s bedroom.

In his interview with Choctaw Nation Tribal Police Investigator Dakota Grantham, Defendant initially denied any impropriety, but, confronted with surveillance video from K.D.'s bedroom showing him holding and kissing K.D., he admitted that he kissed K.D. Defendant called this "an experiment," but conceded that he knew it was wrong to kiss K.D.

## PROCEDURAL HISTORY

A July 26, 2022 indictment charges Defendant with one count of aggravated sexual abuse in Indian Country, in violation of 18 U.S.C. §§ 2241(c), 2246(2)(A), 1151, and 1152. (Doc. No. 2.)

## OFFENSE CHARGED IN THE INDICTMENT

### COUNT ONE

### AGGRAVATED SEXUAL ABUSE IN INDIAN COUNTRY
### [18 U.S.C. §§ 2241(c), 2246(2)(A), 1151, & 1152]

The defendant is charged in Count One of the Indictment with Aggravated Sexual Abuse in Indian Country in violation of Sections 2241(c), 2246(2)(A), 1151, and 1153 of Title 18 of the United States Code. These laws make it a crime for anyone within the territorial jurisdiction of the United States to engage in a sexual act with a person younger than 12 years old.

In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

| | | |
|---|---|---|
| First: | | The defendant knowingly engaged in a sexual act with K.D.; |
| Second: | | At the time the sexual act occurred, K.D. was younger than 12 years old; |
| Third: | | That the sexual act took place within Indian Country in the Eastern District of Oklahoma within the territorial jurisdiction of the United States; |
| Fourth: | | K.D. is an Indian; and |
| Fifth: | | The defendant is a non-Indian. |

Sexual act means: penetration, however slight, between the penis of the defendant and the anus of K.D.

## LEGAL AND EVIDENTIARY ISSUES

**Rule of sequestration**

The government requests that the Court instruct the witnesses for both the United States and the defense to comply with Rule 615 of the Federal Rules of Evidence. The United States will request that FBI Special Agent Paul Sparke be allowed to sit at counsel table as the case agent.

**Courtroom closure for testimony of minor victims**

The government requests, pursuant to 18 U.S.C. § 3509(e), that the Court "order the exclusion from the courtroom of all persons, including members of the press, who do not have a direct interest in the case," when K.D. and A.D. testify. Section 3509(e) gives the Court authority to enter such an order "if the court determines on the record that requiring the child to testify in open court would cause substantial psychological harm to the child or would result in the child's inability to effectively communicate," provided that the order is "narrowly tailored to serve the Government's specific compelling interest." Counsel for defense has communicated that she has no objection to this request.

The Supreme Court has recognized as such a compelling interest "safeguarding the physical and psychological well-being of a minor." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982). Accordingly, the district court "can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim," using such factors as "the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." *Id.* at 608.

K.D. will be eight years of age when he testifies. Due not only to his age, but also owing to personal characteristics that were observable in his forensic interviews, K.D. would benefit from fewer people present, and fewer people entering and exiting the courtroom, to minimize distractions to his attention. A.D. will be 14 years of age. Because she takes medication for autism, obsessive-compulsive disorder, and anxiety, as well as medication to assist her sleep, she can be expected to be more fragile than other children her age.[1] K.D., A.D., and their parents and relatives

---

[1] A.D., due to her severe autism, may benefit from accommodations (a) that would allow the attorneys to examine her at a closer distance, such as from the front podium, and/or (b) that would allow an adult attendant to remain in close physical proximity to her. *See* 18 U.S.C. § 3509(i) ("A child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the child. The court, at its discretion,

desire that the courtroom be sealed for their protection and privacy so that they may effectively communicate with the attorneys.

Defendant would not be prejudiced by such an order because the Court may implement it outside the presence of the jury, Defendant will be present for the testimony of both children, and both children will be subject to cross-examination.

**Evidentiary matters**

1. Federal Rule of Evidence 414

On November 29, 2022, the government filed a notice of its intent to admit evidence of other child molestation under Federal Rule of Evidence 414. (Doc. No. 24.) The government later filed, on February 22, 2023, a motion in limine seeking to exclude from evidence references to an Alabama district attorney's office's deliberations and decision not to prosecute Defendant for the offense that is the basis of the government's Rule 414 notice. (Doc. No. 36.) On March 27, 2023, Defendant filed a motion in limine opposing the government's Rule 414 notice, in part relying on an assistant district attorney's speculation as to his office's failure to prosecute Defendant. (Doc. No. 40.) The government responded. (Doc. No. 42.) These issues await rulings.

2. Federal Rules of Evidence 803(1), 803(2), and 803(3)

K.D. disclosed his abuse to his young cousins, B.D. and N.F. During forensic interviews of B.D. and N.F., each of them described things that K.D. said or did that are admissible as exceptions to the general rule against hearsay as "statement[s] describing or explaining an event or condition, made while or immediately after the declarant perceived it," Fed. R. Evid. 803(1), "statement[s] relating to a startling event or condition, made while the declarant was under the

---

may allow the adult attendant to remain in close physical proximity to or in contact with the child while the child testifies."). The parties will confer about these accommodations and will notify the Court at the pretrial conference of any objections.

stress of excitement that it caused," Fed. R. Evid. 803(2), and/or "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will," Fed. R. Evid. 803(3). For example, B.D. said that K.D. told her, "It really, really burns and hurt my butt," referring to Defendant having sexually assaulted him minutes before. This statement would be admissible, through B.D., under both Rules 803(1) and 803(3),[2] because K.D. was feeling a particular sensation "while . . . [K.D.] perceived it," and the statement related to K.D.'s "then-existing . . . physical condition."

Relatedly, B.D. and N.F. themselves made statements, as declarants, that are admissible under these exceptions. B.D., for example, told the forensic interviewer that, according to K.D., "[Hebert] took the camera down, and then [K.D.] said — this is the part that I really don't want to say." B.D. was referring to K.D.'s disclosure to her how Defendant had assaulted him. B.D.'s statement would be admissible, through the forensic interviewer, under Rule 803(3), because it concerned her "then-existing state of mind" and her "then-existing . . . emotional . . . condition."

3. *Res gestae* evidence and/or Federal Rule of Evidence 414

K.D. disclosed to a sexual assault nurse examiner that Defendant "touched [K.D.'s] pee pee when [K.D.] was asleep." Defendant is not charged with touching K.D.'s genitalia. Nevertheless, that evidence is closely intertwined with the assault for which Defendant is charged, that is, inserting Defendant's penis into K.D.'s anus. The government will argue that such evidence, therefore, is *res gestae*. *See United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (holding that "evidence is admissible when it provides the context for the crime, is necessary to a

---

[2] Depending on foundational testimony, the statement is likely also admissible as an excited utterance under Rule 803(2).

full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the *res gestae*."), quoting *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980) (cleaned up).

In the alternative, the government hereby gives notice to Defendant and to the Court that this act is admissible under Federal Rule of Evidence 414 as an uncharged act of child molestation. The act is "conduct prohibited by 18 U.S.C. chapter 109A and committed with a child," see Fed. R. Evid. 414(d)(2)(A), and evidence of K.D.'s disclosure was provided to Defendant in discovery on or about September 23, 2022.  Accordingly, pursuant to Rule 414(a), the act is admissible and "may be considered on any matter to which it is relevant."

## **PROPOSED WITNESSES AND TIME OF DIRECT EXAMINATION**

The United States expects to call the following witnesses in its case-in-chief.  The anticipated time for the direct examination and a summary of the expected testimony is provided for each witness. ***Note:*** This is not an exhaustive list of potential witnesses in the case, nor is it an all-inclusive list of the topics each witness will discuss at trial. Rather, the following is merely the witnesses and topics the United States believes may be necessary.

**Witnesses relating to the charged offense**

1. K.D.
   Approximately 45 minutes
   Victim

K.D. will testify that Defendant sexually abused him in July 2021.  When he testifies, K.D. will be eight years of age.

2. B.D.
   Approximately 30 minutes
   Cousin of K.D.

B.D. will testify that K.D. described to her having been sexually abused by Defendant. When she testifies, B.D. will be nine years of age.

    3.    N.F.
           Approximately 30 minutes
           Cousin of K.D.

N.F. will testify that K.D. described to her having been sexually abused by Defendant. When she testifies, N.F. will be nine years of age.

    4.    B.P.
           Approximately 45 minutes
           Mother of K.D.

B.P. will testify about her interactions with Defendant and K.D. on July 20-21, 2021.

    5.    K.B.
           Approximately 45 minutes
           Aunt of K.D.; mother of B.P. and N.F.

K.B. will testify about her interactions with Defendant, K.D., and K.B.'s children (B.P. and N.F.) on July 20-21, 2021. She will also testify about the system of video cameras that was installed in her house at the time.

    6.    Dakota Grantham
           Approximately 30 minutes
           Investigator, Choctaw Nation Tribal Police

Grantham will testify about his investigation, including his interview with Defendant.

    7.    Jennifer Heflin
           Approximately 30 minutes
           Forensic interviewer

Heflin will testify about her forensic interviews with K.D., B.D., and B.F.

    8.    Cynthia Sanford
           Approximately 30 minutes
           Sexual assault nurse examiner

Sanford will testify about her examination of K.D.

9.       Representative of Muskogee County Sheriff's Office
           Approximately 10 minutes

This witness will testify about booking procedures at the Muskogee County Jail and that Defendant identified himself as non-Indian.

10.     Representative of the Choctaw Nation
           Approximately 10 minutes

This witness will testify that K.D. is an enrolled member of the Choctaw Nation and that the residence where the offense is alleged to have occurred is within the territorial boundaries of the Choctaw Nation reservation and in the Eastern District of Oklahoma.

11.     Representative of the United States Marshals Service
           Approximately 10 minutes

This witness will testify that Defendant was located and arrested in Wattsburg, Pennsylvania on August 31, 2022.

12.     Vicki Boan
           Approximately 30 minutes
           Forensic interviewer

This witness will testify as an expert regarding the individualized process of child sexual abuse disclosure.

**Witnesses relating to Rule 414 evidence**

13.     A.D.
           Approximately 45 minutes
           Rule 414 victim

A.D. will testify that Defendant sexually assaulted her in October or November 2018.

14.     D.M.
           Approximately 30 minutes
           Mother of A.D.

D.M. will testify about the circumstances surrounding A.D.'s sexual assault.

## CONCLUSION

The United States respectfully submits this trial brief to anticipate the factual and legal issues which may arise at trial. The United States requests that this Court grant it leave to submit additional briefing should subsequent issues be identified.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/      Anthony C. Marek
ANTHONY C. MAREK
State Bar of Michigan #P76767
Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
Telephone: (918) 684-5100
Anthony.Marek@usdoj.gov

## CERTIFICATE OF SERVICE

I, hereby certify that on April 10, 2023, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Whitney R. Mauldin
Attorney for Defendant

s/      Anthony C. Marek
ANTHONY C. MAREK
Assistant United States Attorney